DISHNEAU, Respondent, vs. NEWTON and others, Appellants.

*May 25 — June 11, 1897.*

*Conversion: Attachment: Redelivery: Agency.*

In an action for the conversion of plaintiff's horses by a sheriff who had attached them as the property of her husband, it appeared conclusively that for a long time prior to the attachment the horses had been under the complete and exclusive control of the husband; that upon the release of the attachment the sheriff delivered the horses to third persons in pursuance of a contract of sale entered into with them by the husband as plaintiff's agent; and that the release was procured by attorneys in the employ of the husband. *Held,* that the horses had been in legal effect redelivered to the husband, even though the contract of sale was not binding upon plaintiff.

APPEAL from a judgment of the superior court of Douglas county: CHAS. SMITH, Judge. *Reversed.*

This is an action to recover damages for the conversion of six horses. The action was brought against the sureties upon the official bond of one Dan Kennedy, now deceased, who was the sheriff of Douglas county from January, 1891, to January, 1893. The alleged conversion took place in November, 1892, at the city of Superior. At that time the plaintiff was a married woman, living in Michigan. Her husband, Edward Dishneau, was, in company with one Thompson, engaged in business as a railroad contractor, and the firm was working upon a contract at or near Iron River, in this

state, and was using in its business fourteen horses, which were furnished to the firm by Edward Dishneau. The plaintiff testified that all of these horses belonged to her, and had been bought with her own separate estate, prior to her marriage with Dishneau. Dishneau had used and controlled the horses at all times. The work at Iron River was concluded early in November, 1892, and Dishneau sent the horses to Superior, and placed them in a livery stable at that place. On the 15th day of November, while at the livery stable, six of the horses were attached, at the suit of creditors of the firm of Thompson & Dishneau, by Sheriff Kennedy, who, however, left the horses in the custody of the livery-stable keeper. Within three or four days after the attachment writ was served, Dishneau made a written contract with the firm of McCarthy & Thayer, as follows:

"*Know all men by these presents,* that *Clara Dishneau,* by Edward Dishneau, agent, agrees to sell to C. A. McCarthy and John P. Thayer, of Superior, Wis., fourteen head of horses, five wagons, and seven set of harness, for the sum of one thousand dollars, and feed bill, to be paid as follows, to wit: There being an attachment against six of said horses in a suit brought by Carney J. Nesbitt to recover $686 62-100, now pending in the circuit court, it is agreed that said McCarthy and Thayer shall take said horses, and sell the same, and turn the money in to McHugh, Lyons & McIntosh, of West Superior, Wis., until the sum of $1,000 shall have been paid, it being agreed that said attachment shall be released in ten days or as soon as shall be, and clear title given by that time to all the horses, and that none of the money shall be delivered to said *Dishneau* until after the attachment shall have been released, either by the dismissal of the suit or by bond or by a deposit of the necessary amount to release the said attachment with the sheriff; it being the intention of the parties that clear title shall be given before any money shall be turned over to *Dishneau.* [Here follows

a description of the horses.]  Said *Dishneau* to execute a bill of sale to each purchaser of said horses at time of sale by said McCarthy and Thayer.

"CLARA DISHNEAU.

"EDWARD DISHNEAU, Agent."

This contract was left by the parties with the law firm of McHugh, Lyons & McIntosh, who were acting in the matter for Dishneau.  This firm procured an undertaking to be signed and delivered to the sheriff for the return of the property.  Dishneau denies having anything to do with the undertaking, and alleges that he knew nothing of it.  He went to Michigan soon after the execution of the contract, and claims that his wife objected to the sale of the horses, but no intimation of such objection was sent to anybody at Superior.  Upon receipt of the bond, the sheriff released the horses; that is, he notified the livery-stable keeper that the attachment was released, and he made return upon his writ that an undertaking had been given under sec. 2742, R. S., and that the horses had been delivered to Dishneau.  The horses were not, in fact, however, delivered to Dishneau, but were delivered by the livery-stable keeper to McCarthy & Thayer, upon their paying the bill for their keeping.

The plaintiff brought this action in 1894, claiming that the horses were in fact converted by the sheriff.  The jury returned a special verdict to the effect (1) that the plaintiff was the owner of the property at the time of the conversion; (2) that the property was never redelivered to Mr. Dishneau; (3) that the value of the horses was $600.  On this verdict judgment for the plaintiff was rendered and defendants appealed.

*H. H. Grace*, for the appellants.

For the respondent there was a brief by *Murphy & Bundy*, attorneys, and *E. B. Bundy*, of counsel, and oral argument by *R. E. Bundy*.

Dishneau vs. Newton and others.

WINSLOW, J. Probably the proof was sufficient to sustain that part of the verdict which finds that the plaintiff owned the horses in question at the time of the alleged conversion, but we are quite well satisfied that the finding to the effect that the horses were not redelivered to Mr. Dishneau is against the weight of the evidence, and was based upon an erroneous instruction.

The court charged the jury upon this question as follows: "The burden here is upon the defendant to show that the property was redelivered to Mr. Dishneau. However, the statute makes the return of the officer presumptive evidence of the facts therein stated. Now, the return of the officer that had this property in charge, and which has been offered in evidence here, states that the property was returned to Mr. Dishneau. That, gentlemen, however, is merely a presumption,— a legal presumption,— that gives way as a matter of course, and yields to any positive credible evidence that it was not redelivered. Here, if you find the horses were delivered by the officer to Thayer & McCarthy, although in pursuance of an arrangement with Mr. Dishneau, by which Thayer & McCarthy were to become the owners of the horses, you will answer 'No' to that question; that is, I say, the delivery of the horses to Thayer & McCarthy was not a delivery to Dishneau, although it was in pursuance of an arrangement,— although made in pursuance of an arrangement between Dishneau and Thayer & McCarthy."

The evidence was conclusive that Dishneau, for a long time prior to the attachment suit, had complete and exclusive control of the horses. He took them where he pleased, employed them as he pleased, and at all times had done as he saw fit with them, with his wife's full consent. He was certainly clothed with apparent ownership. While it may be that he had not authority to sell them, certain it is that he had power to place them in charge of any person he chose. Thus, while the contract of sale to McCarthy &

Thayer may not have been binding upon her as a sale of the horses, still, if McCarthy & Thayer obtained possession of the horses under it, their possession would certainly be rightful, because obtained from the agent of the owner, who had the right to control their possession. They might not be able to enforce their contract of purchase on account of lack of authority in Dishneau to sell, but their possession would be rightful at least until the owner had repudiated the contract of sale and demanded return of the property. The contract expressly provided that McCarthy & Thayer should take possession of the horses upon their being released from the attachment levy. Whether Dishneau actively assisted in or was present at the time of the giving of the bond to release the horses from the attachment levy, we regard as of no moment. The bond was prepared by his attorneys, unquestionably by virtue of their employment, and Dishneau cannot now repudiate their acts. The contract and bond together justified the sheriff in allowing the property to be delivered to McCarthy & Thayer, and such delivery was really, in legal effect, a delivery to Dishneau. The charge to the effect that the delivery of the horses to McCarthy & Thayer was not a delivery to Dishneau, although made in pursuance of the arrangement between Dishneau and McCarthy & Thayer, was therefore erroneous. The defendants were entitled to an instruction, upon the uncontradicted evidence, that the horses had been, in legal effect, redelivered to Dishneau.

*By the Court.*— Judgment reversed, and action remanded for a new trial.